IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

TIMOTHY JEROME JOHNSON,

    Plaintiff,

vs.                                                                    CASE NO. 2:10-cv-02836-PWG

BIRMINGHAM, CITY OF, et al.,

    Defendants.

## REPORT AND RECOMMENDATION

Before the court is defendants' motion for summary judgment, brief and evidentiary submissions (docs. 20, 21), plaintiff's response and evidentiary submissions (doc. 25), and defendants' reply (doc. 27). The matter is before the undersigned magistrate judge pursuant to the provisions of 28 U.S.C. § 636(b); the General Orders of Reference dated July 25, 1996 and May 8, 1998, as amended July 27, 2000; and Rule 72 of the *Federal Rules of Civil Procedure*. Having considered the foregoing, the undersigned recommends as follows:

### Factual and Procedural Background[1]

On or about October 20, 2008, at roughly 7:00 p.m., Officer Christopher Hutchinson ("Hutchinson") was patrolling in the alleyway of the BP service station in the 1100 Block of Third Avenue North in Birmingham, Alabama. Hutchinson Aff. (Doc. 21 Exh. 1) 2. He encountered the plaintiff, Timothy Johnson ("Johnson"), and two other men in the alley, an area

---

[1] At summary judgment, the court views the facts in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970). The court therefore does so here, drawing those facts from the pleadings, depositions, and other evidentiary materials on file. Nevertheless, what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts nor all of the facts. *See Crawford v. Carroll*, 529 F.3d 961, 964 n.1 (11th Cir. 2008).

known for drug purchasing, drug usage and sales, and alcohol offenses. *Id.* Johnson had just stopped at the BP station and was holding two unopened beers. Johnson Aff. (Doc. 26 Exh. A) 1. Hutchinson conducted field interviews of all three persons, and requested that they present identification. Hutchinson Aff. 2. He ran all the identification of each through the National Crime and Information Center (N.C.I.C.) and discovered that Johnson had an outstanding probation violation warrant from the Birmingham Municipal Court.[2] *Id.* He let the other two go, but placed Johnson under arrest. *Id.*

Hutchinson searched Johnson incident to the arrest and discovered a bag of marijuana. *Id.* Hutchinson charged Johnson with Unlawful Possession of Marijuana; Johnson became angry and was cursing that he was being arrested. *Id.* Johnson alleges that Hutchinson verbally assaulted him by saying "I am a bitch" and calling him a "motherfucker" and a "son of a bitch." Johnson Aff. 1. Hutchinson also grabbed the back of the waist of Johnson's pants and slammed him onto the hood of the police car.[3] *Id.* Hutchinson "forearmed" Johnson at least three more times and stated that "if [Johnson] did not like it, [he] could take it up with Chief Roper." *Id.* at 2. Johnson was transported to the Birmingham City Jail and booked in. Hutchinson Aff. 3. Johnson states that he did not resist Hutchinson in any way, and he experienced injury to his back, chest, and right shoulder, for which he had to be treated following his release from the Birmingham City Jail. Johnson Aff. 2. He later pleaded guilty to the charge in the Birmingham Municipal Court

---

[2]Johnson has an extensive criminal record with the City of Birmingham. *See* Doc. 21 Exh. 3.

[3]Hutchinson denies that either of these things happened, *see* Hutchinson Aff. 2–3, but taking the facts in the light most favorable to the plaintiff, the court must assume plaintiff's version of the facts.

(Case # 010457131). Hutchinson Aff. 2.

Officer Hutchinson has been employed as a Police Officer with the City of Birmingham ("City") since November 2004. Hutchinson Aff. 1. He is currently a detective in the Birmingham Police Department Crime Reduction Team and is assigned to the U.S. Marshals Service Gulf Coast Regional Fugitive Task Force. *Id.* Among other areas, he received training at the Birmingham Police Academy on federal and state criminal laws, how to conduct lawful investigations and arrests, and the City's use-of-force policy. *Id.* His training is supplemented yearly during regular career training and roll call meetings. *Id.* He is certified by the Alabama Police Officer Standards and Training Commission and is supervised through various individuals at the Birmingham Police Department. *Id.*

On October 19, 2010, plaintiff filed this lawsuit, alleging that Hutchinson's conduct violated 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and was negligent, reckless, wanton, intentional, or malicious. *See* Compl. Hutchinson is sued both in his individual capacity and in his official capacity as a police officer for the City of Birmingham. *See id.* at ¶ 6. The City is sued based on a respondeat superior theory of liability; on allegedly approved customs, policies, and practices followed by Hutchinson; and on their alleged failure with regard to education, training, supervision, and discipline. *See id.* at ¶¶ 22–24. Plaintiff requests monetary relief, punitive damages, and attorneys fees.

## Standard of Review

A moving party is entitled to summary judgment if there is no genuine dispute as to any material fact, leaving final judgment to be decided as a matter of law. *See* FED. R. CIV. P. 56; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The facts, and any

reasonable inference therefrom, are to be viewed in the light most favorable to the non-moving party, with any doubt resolved in the nonmovant's favor. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970). Once met by the moving party, however, the burden shifts to the nonmovant to come forward with evidence to establish each element essential to that party's case sufficient to sustain a jury verdict. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990). A party opposing a properly submitted motion for summary judgment may not rest upon mere allegations or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial. *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir. 1990).

## Legal Analysis

**Federal Claims**

Plaintiff argues that Officer Hutchinson did not have a right under § 1983 or the United States Constitution to stop, search, arrest, or use such force against him.

*I. Qualified Immunity*

Defendants argue that Officer Hutchinson is immune from suit in his individual capacity under the doctrine of qualified immunity. A public official is entitled to qualified immunity for actions taken pursuant to his discretionary authority "insofar as [his] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The central purpose of affording public officials qualified immunity from suit is to protect them "from undue interference with their duties and from potentially disabling threats of liability." *Id.* at 806. Qualified immunity gives protection to "all but the plainly incompetent or those who knowingly violate the law." *Courson*

*v. McMillian*, 939 F.2d 1479, 1487 (11th Cir. 1991) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

First, the court must determine whether the official acted within the scope of their discretionary authority when engaged in the conduct complained of. Second, the Court decides whether Johnson has adequately alleged and provided evidence of the violation of a constitutional right. *See Scott v. Harris*, 550 U.S. 372, 377 (2007). If and only if the Court finds a violation of a constitutional right, it then determines whether "a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred." *Cannon v. Macon County*, 1 F.3d 1558, 1564 (11th Cir. 1993) (quoting *Hardin v. Hayes*, 957 F.2d 845, 848 (11th Cir. 1992)); *see also Courson*, 939 F.2d at 1487–88 (citing *Andreu v. Sapp*, 919 F.2d 637, 641 (11th Cir. 1990)).

*A. Discretionary Function*

"[A] government official can prove he acted within the scope of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'" *Rich v. Dollar*, 841 F.2d 1558, 1564 (11th Cir. 1988) (quoting *Barker v. Norman*, 651 F.2d 1107, 1121 (5th Cir. 1981); *Douthit v. Jones*, 619 F.2d 27 (5th Cir. 1980)).

Officer Hutchinson was engaged in the performance of discretionary functions at all times relevant to this case. The stop, search, arrest, and force used to effectuate the arrest were all duties "carried out in the performance of his normal job duties and were within the authority delegated to him by his employer." *Rich*, 841 F.2d at 1564.

*B. Clearly Established Law*

*i. Excessive Force*

An officer is entitled to qualified immunity from an excessive force claim "unless application of the [excessive force] standard would inevitably lead every reasonable [official] in [the officer's] position to conclude the force was unlawful." *See Post v. City of Fort Lauderdale*, 7 F.3d 1552, 1559 (11th Cir. 1993). The excessive force standard is based on reasonableness, and looks to the need for force, the amount of force used, the injury inflicted, and whether the force was "applied in a good faith effort to maintain . . . discipline or maliciously and sadistically for the very purpose of causing harm." *Jones v. City of Dothan*, 121 F.3d 1456, 1461 (11th Cir. 1997) (quoting *Wilson v. Northcutt*, 987 F.2d 719, 722 (11th Cir. 1993)); *see also Graham v. Connor*, 490 U.S. 386, 396 (1989).

Although there is no evidence that plaintiff attempted to flee the scene, there is evidence that he became angry and was cursing. Even if it was not necessary for Hutchinson to be at all physically rough with plaintiff, application of the excessive force standard would not lead a reasonable officer to conclude that the force used in this case was unlawful. Further, there is no evidence that Hutchinson applied any force maliciously or intended to cause plaintiff any harm. *See Post*, 7 F.3d at 1560 (holding that where an officer put plaintiff into a choke-hold and pushed him into a wall, the application of the excessive force standard would not inevitably lead an official in the officer's position to conclude that the force was unlawful since the amount of force was minimal).

*ii. Search, Detention, and Arrest*

As a general rule, an official seizure of a person must be supported by probable cause, even if no formal arrest is made. *Dunaway v. New York*, 442 U.S. 200, 208 (1979). However, the

Supreme Court has carved exceptions to this rule where a limited intrusion on a citizen's privacy is justified by special law enforcement interests. *See, e.g.*, *Illinois v. McArthur*, 531 U.S. 326, 331–32 (2001) (holding that, with probable cause to believe defendant had marijuana in his home, police officers were reasonable in detaining and preventing suspect from entering his home while they obtained a search warrant given the limited nature of the intrusion and the law enforcement interest at stake); *United States v. Brignoni-Ponce*, 422 U.S. 873, 881–82 (1975) (holding that even though no probable cause exists, a roving Border Patrol agent can stop a vehicle near Mexican border if he is aware of specific articulable facts indicating that the vehicle contains illegal aliens); *Adams v. Williams*, 407 U.S. 143, 145–47 (1972) (holding that an officer can forcibly stop a suspect, even if no probable cause exists, to investigate a reliable informant's tip that the suspect is armed and dangerous); *Terry v. Ohio*, 392 U.S. 1, 27 (1969) (holding that an officer can "frisk" for weapons, even if no probable cause exists, if he reasonably believes he is dealing with an armed and dangerous suspect). Furthermore, qualified immunity attaches where there is "arguable probable cause." *Holmes v. Kucinda*, 321 F.3d 1069, 1079 (11th Cir. 2003). An arresting officer is deemed to have arguable probable cause if reasonable officers in the same circumstances and possessing the same knowledge as the arresting officer could have believed probable cause existed to arrest the defendant. *Kingsland v. City of Miami*, 382 F.3d 1220, 1232 (11th Cir. 2004).

Officer Hutchinson had reasonable suspicion of criminal behavior given the totality of actions observed by him and the area in question, and did not exceed his authority when he stopped to question plaintiff and the two other men. *See Terry v. Ohio*, 392 U.S. 1, 22 ("One general interest is of course that of effective crime prevention and detection; it is this interest

which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. "). Hutchinson stopped plaintiff and the other two men and asked for their identification; there is no evidence that plaintiff did not consent to providing identification. After running the identification through the N.C.I.C. database and discovering the outstanding warrant for his arrest, Officer Hutchinson had at least arguable probable cause to arrest and search him. He conducted a search incident to arrest, which produced a small bag of marijuana, bolstering the probable cause for plaintiff's arrest. Further, the evidence does not show that Hutchinson acted maliciously or without good faith.

   *iii. False Imprisonment*

Plaintiff argues that since he was put under false arrest, his incarceration following the arrest was similarly tainted and rose to the level of false imprisonment. A claim under section 1983 for false imprisonment requires a showing of common law false imprisonment and a due process violation under the Fourteenth Amendment. *Cannon v. Macon County*, 1 F.3d 1558, 1562–63 (11th Cir. 1993). Even if plaintiff could prove common law false imprisonment,[4] as discussed above, there is no evidence of a due process violation in Hutchinson's arrest of plaintiff.

Plaintiff has failed to prove that Hutchinson violated clearly established statutory or constitutional rights of which a reasonable person would have known. Under the doctrine of qualified immunity, plaintiff's federal claims against Hutchinson are due to be dismissed and

---

[4]The elements of common law false imprisonment are an intent to confine, an act resulting in confinement, and the victim's awareness thereof. *Cannon v. Macon County*, 1 F.3d 1558, 1562 n.3 (11th Cir. 1993).

summary judgment is due to be granted.

*I. Municipal Liability for § 1983 Claims*

"Congress did not intend municipalities to be held liable [for claims under section 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) ("[A] municipality cannot be held liable under § 1983 on a *respondeat superior* theory."). Thus, plaintiff must prove that a municipal policy or custom cause his injury. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).

Policy is an officially adopted decision by the municipality, or one created by an official who can be said to be acting on behalf of the city. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997) (citing *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1479–80 (11th Cir. 1991)). The court must review relevant state laws; city ordinances, rules, and regulations; and relevant customs and practices "having the force of law." *Mandel v. Doe*, 888 F.2d 783, 793 (11th Cir. 1989). A policy is not "limited to decisions made by the city's official legislative body," but includes action by a city's official who has "final policymaking authority." *Brown v. City of Fort Lauderdale*, 923 F.2d 1474, 1480 (11th Cir. 1991). To determine whether acts of a municipal officer subject a city to § 1983 liability, the court looks at whether the municipality official sanctioned or ordered the act, or whether the municipal officer had final policy authority, or whether the action was taken pursuant to a policy adopted by officials responsible under state law for making policy in that area. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–83 (1986). Defendant argues that Chief of Police A.C. Roper is the final policymaker in matters related to the Police Department. Thus, it argues that Hutchinson did not have final policy-making authority. *See id.* at 486 ("A sheriff, for example, is not the final policymaker with respect to the

9

probable-cause requirement for a valid arrest. He has no alternative but to act in accordance with the established standard; and his deliberate or mistaken departure from controlling law of arrest would not represent municipal policy."). Plaintiff does not dispute this fact.

Custom is a settled, permanent practice that takes on the force of law. *Monell*, 436 U.S. at 691 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)). To be a custom, a practice must be "longstanding and widespread . . . ." *Brown*, 923 F.2d at 1481. Plaintiff must prove that a "series" of prior unconstitutional conduct which may suggest a widespread custom or policy exists. *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 130 (1988).

Plaintiff concedes that he "cannot identify any municipal police or custom on the part of the city that caused the constitutional injuries of which he complains." Thus, plaintiff's § 1983 claim against the City fails as a matter of law and summary judgment is due to be granted to City.[5]

**State Law Claims**

---

[5]Negligent supervision and training can support municipal liability only "where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants," such that it amounts to a policy or custom. Sewell, 117 F.3d 489–90. "Deliberate indifference" exists where "a municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold, 151 F.3d at 1350.
Plaintiff has not provided any facts in support of an argument that Hutchinson made a policy decision on behalf of the City, nor has he pointed to a specific settled practice that could be deemed custom. There is no evidence that the City of Birmingham trains its police officers to assault individuals during an arrest. Hutchinson states that the policy in place governing investigation, use-of-force, arrests, and detention is based upon the Fourth Amendment to the United States Constitution. Hutchinson received training at the Police Academy, which is supplemented regularly during career training and roll call meetings. Plaintiff has not pointed to any evidence that the City knew or even should have known of a need to train Hutchinson in a particular area or that it failed to adequately supervise him. He has not identified any specific deficiency in the City's police training or supervision program, nor has he pointed to any previous incident which would alert the City to the need for extra training or supervision.

Alabama law provides immunity from state law claims to law enforcement officers for discretionary act while acting in the line and scope of their duties; the immunity is also extended to peace officers and their employers. ALA. CODE § 6-5-338 (1975); *Ex parte City of Gadsden*, 781 So.2d 936, 939 (Ala. 2000).

The Alabama Supreme Court applies a burden-shifting analysis when a party claims state-agent immunity. *See Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003). First the officer must show that the claims arise from a function which would entitled him to immunity. *Id.* (citing *Ex parte Wood*, 852 So.2d 705, 709 (Ala. 2002)). The burden then shifts to plaintiff to show that the officer acted willfully, maliciously, fraudulently, in bad faith, or beyond his authority. *Id.* (citing *Wood*, 852 So.2d at 709). The officer is due immunity when he is required to "make a difficult split-second decision under unusual circumstances," and the immunity is not lost due to mere negligence, wanton behavior, or poor judgment. *City of Gadsden*, 781 So.2d at 939.

Officer Hutchinson was on duty as a police officer employed by the City. His duties include "the enforcement of, or the investigation and reporting of violations of the criminal laws" of Alabama. ALA. CODE. § 15-10-1. Enforcement of the criminal laws, arrests, and attempted arrests are discretionary functions. *Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000); *Ex parte City of Birmingham*, 624 So.2d 1018 (Ala. 1993). As discussed above, Officer Hutchinson had reasonable suspicion to stop plaintiff and at least arguable probable cause to search and arrest him, and there is no evidence that Officer Hutchinson acted maliciously or in bad faith, or beyond his authority. Because Officer Hutchinson qualifies for state agent immunity, plaintiff's state law claims against Hutchinson and the City fail as a matter of law.

**Conclusion**

Having considered the foregoing, the undersigned finds that Officer Hutchinson is not liable under the doctrine of qualified immunity. Plaintiff's federal claims against the City fail as a matter of law. Plaintiff's state law claims fail as both defendants are afforded state agent immunity. Accordingly, the undersigned recommends that defendants' motion for summary judgment (doc. 20) be GRANTED and plaintiff's claims be DISMISSED.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b)(2), FED. R. CIV. P., any party may file specific written objections to this report and recommendation within fifteen (15) days from the date it is filed in the office of the Clerk. Failure to file written objections to the proposed findings and recommendations contained in this report and recommendation within fifteen (15) days from the date it is filed shall bar an aggrieved party from attacking the factual findings on appeal. Written objections shall specifically identify the portions of the proposed findings and recommendation to which objection is made and the specific basis for objection. A copy of the objections must be served upon all other parties to the action.

**DONE**, this 22nd day of June, 2012.

_____
PAUL W. GREENE
CHIEF MAGISTRATE JUDGE